We will next hear argument in 18-56317, VBS Distribution, Inc. v. Nutrivita Laboratories, Inc. May it please the Court, I am James Azzedian and I represent the appellants, VBS Distribution and VBS Television Corporations, which I will refer to collectively as VBS. Joining me at Council's table are my colleagues, Corey Webster and Scott Pressman, and I would like to reserve five minutes of my time for rebuttal, which will be presented by Mr. Webster. This Court should reverse the trial court's summary judgment because there are disputed issues of material fact as to each of the five claims brought by VBS and made the subject of this appeal. False advertising, trade dress infringement, misappropriation of trade secrets, breach of fiduciary duty, and civil conspiracy. This Court has repeatedly warned that summary judgments are disfavored in Lanham Act cases because the ultimate issue is so inherently factual. This case is an illustration of that principled warning. The trial court here selected and analyzed only one element from each of the causes of action and determined that there wasn't enough evidence or the evidence was not strong enough to overcome summary judgment. The trial court erred because the evidence presented by VBS was sufficient to clear the summary judgment hurdle, although a jury of course may reject such evidence or more favorably regard one witness's testimony over another witness's testimony, the trial court on summary judgment should not have made such determinations and should not have weighed the conflicting evidence presented by the. Can you clarify a point, which is this 100% herbal, did that appear just on one advertisement or did it appear on other product labels or other advertisements? Your Honor is understanding the record is correct. It appeared on multiple packages and mediums of advertisement, the channels of advertisement, not just simply the Viet Nien newspaper, but multiple times in that newspaper, which I would represent to you as it's represented in the record, is the number one newspaper publication in the United States for the Vietnamese reading community, but also on each of the which is the supplement, the joint muscle pain supplement that competes with Arthro 7. Arthro 7 is of course the product that was manufactured by the supplement defendants. So why did the, do you contend the district court erred in finding that you didn't have  Because Your Honor, the record establishes that VBS presented evidence that the, this false and misleading statement injured VBS by diverting potential sales of its own competing. What was that evidence that showed that? That evidence Your Honor is at, did you have an expert who, who analyzed that and figured out how much had transferred or, or what sales were lost? No, Your Honor, not at the summary judgment stage. What was presented, however, to the trial court and that's at 70 are pages 1483 to 1484 and at page 1500 are the two declarations of Mr. Joseph Winn, who's the founder, director and the chairman of the VBS corporations. Those declarations are pretty sparse though. They basically say I'm the CEO, I believe this would cause harm and I think he's referring to not just 100% herbal, but a number of other allegedly false advertisements or statements, which I think are no longer here with us on appeal. Correct, Your Honor. We are right now, we focused our appeal on the 100% natural herbal misrepresentation or falsity and I do think actually the declarations of Mr. Winn are important. While they might not have risen to the level of evidence and the strength of evidence that the district court may have preferred, that is exactly the kind of error that this court held in Clicks Billiards is inappropriate to consider in Lanham Act cases. Do you concede you had to show the fact of injury to prevail on your Lanham Act claim? The fact of injury, yes. Now in terms of damages, no, Your Honor. There's a difference between injury as an element of the claim and an essential element to prevail on the claim and then quantifying the damages. I'm going to separate those two. Do you concede that you had to make a showing on the first one? Is there your position you didn't need to do that? No, we did need to show injury, Your Honor. However, the remedies available under Lanham Act are not just simply damages and monetary. As this court held in Southland, in the Southland case, and I can provide that citation, that is 108 F. 3rd 1134 at page 1146, an inability to show actual damages does not preclude recovery, this court reminded us. The district court has discretion to fashion relief based on the totality of the circumstances. And the Lanham Act does- Injunctive relief or some other quantum of fashioning damages recovery, Your Honor, based on the totality of the circumstances. But your opening brief did not raise injunctive relief. And so that issue appears forfeited. Your Honor, I would- You raised it in your reply, but I didn't see it in the opening brief. The opening brief talked about the fact of injury and the specific defecting causation that the district could identify, but I didn't see anything about injunctive relief and not needing to meet that standard. Your Honor, respectfully, I wouldn't- I don't believe that it was forfeited and for this reason. The trial court focused its inquiry on damages. We were focusing on the trial court's error, saying that while VBS did not lose revenue, meaning there wasn't a downward decline and it wasn't in the red during this time period of 2013-2015, that you haven't proved injury. We dealt with that particular position that the district court hung its decision on. But when the argument was made in the answering brief that that's all you can get is damages or the suggestion that that's all the limitation is, at that point, that opened the door for us to say, no. As we argued in the trial court, this court and the district court has broad discretion to fashion a remedy under the statute, the Lanham Act. So I don't believe that it was forfeited. It was a direct response to an argument that was made in the answering brief, Your Honor. I would say that the other piece of evidence that I'd refer to, and that's the declaration of Mr. Nguyen, what he says is that the false claims cause consumers to believe that their product is superior to ours and that causes consumers to purchase their product over ours. Now, that is a diverted profits, you know, quantum or measurement, and that is one of the theories, the principle theory, on which this particular claim was based. But the trial court erred in not considering that and, in fact, said because you weren't in the red for that time period, hence, there's no recovery available under this Lanham Act claim. Well, it would seem that if this is sufficient, you could get past summary judgment on this element almost every time because a company executive or CEO could put together an affidavit that says, in good faith, I believe that their advertisements are harming my business. But if that's sufficient, I think a lot of these cases are going to fail at summary judgment perhaps every time. Well, Your Honor, I think Your Honor may be referencing the Clicks Billiards case. In that case, Judge McEwen, writing for the court, said, this court has repeatedly warned that summary judgments are disfavored in Lanham Act cases because the ultimate issue is so inherently factual. And Your Honor, I think is absolutely right. And that warning, that principled warning is illustrated in this case. Although I don't read that decision to suggest that summary judgment is never appropriate. And the issue I have is we have here a single line and a single declaration. And that's and it doesn't just refer to this 100 percent herbal point. It refers to a lot of other statements. And your argument is that that standing alone is sufficient. And the point I'm trying to press is if that's if that is sufficient, then I think these will these will always be allowed to go forward. And I don't think that's our law. Your Honor, respectfully, respectfully, I don't I don't view it that way. While I agree with you that certainly the gateway is opened much further in these in these types of cases. But I wouldn't say that in every case it gets past summary judgment. I think the facts presented in this case are are fairly unique. I mean, if you look at the Clicks Billiards and you look at even the Fuddruckers case, recognizing it's not a summary judgment case, that case. But Clicks Billiards was there. The court lists a number of cases, even outside the circuit, pointing to those cases where summary judgment would have been appropriate. And it's a unique it's unique facts of this case that allow us to move past summary judgment because the trial court focused on this particular element. Now, had the trial court analyzed all the other elements, too, Your Honor, we might be having a different conversation here today recognizing that. But the trial court didn't. It narrowed its review, its judicial review, to this particular element. And hence, that is the element that this court is focused on, too. If the trial court erred in in weighing the evidence or in not drawing all reasonable inferences in favor of the non-moving parties, that being DBS, then that claim does go back to the trial court. Let's talk for a second about the trade dress claim. How tell me why the district court erred in concluding that, you know, you're making a claim based on look and feel and you didn't even give him exemplars of what the show was. You just gave him a few stills and a list of features and look and feel. You kind of need to see the look and feel. So he viewed this as just a textbook, complete failure of proof. Why was that wrong? Your Honor, because again, it goes to the strength of the evidence. What the judge was, what Judge Carney was saying there was, you know, if we have better evidence, why aren't you presenting that? But assessing the strength of the evidence and if there's better evidence or a preference for what is viewed as stronger evidence, that is the function for a trier of fact. As this court, as the Supreme Court has reminded us in Anderson and as this court has reminded us in Prevents, the two similar cases. Counselor, did you represent to the judge that you had all the evidence before him that you that you intended to bring at trial? Discovery was complete. Is that right, Your Honor? All the depositions that have wanted to be taken had been taken. Your Honor, I can't tell you what I can tell you what I what the record might say about that, but I did not represent these clients in the underlying case. But I can tell you my review of the record says that there is no such representation, that there was a complete discovery closed. Discovery by this time was closed, I believe, and I'll check the record on that. But I mean, if you proceeded to trial, you would not have had an opportunity then to provide a DVD with the side by side comparisons of the two shows, is that correct? We would have been able to. And, Your Honor, I think your question does speak to another important point, which is to answer your question. Yes, we would have. And, Your Honor, I concede that it would have been stronger evidence and I concede that   I don't know if it would have been stronger evidence in the brief. I don't have an explanation for why that wasn't presented. However, just as in Clicks Billiards, where there was evidence that was stronger. I see Your Honor has a question. No, you may want to save time for rebuttal. Did I just run through 10 minutes? All right. Thank you very much. Good morning, Your Honors. If it would please the court. My name is Joseph Trojan. I'm counsel for appellees. We have to look at this in the context of this whole litigation. There were three summary judgments filed. Each, the first one was postponed. The second one, the judge allowed them to amend the complaint. And then there's a third, third after it had been amended for the, I think, the second or third time. So he repeatedly put them on notice of defects in their complaint, repeatedly permitted years after we're past the pleading stage of the case to amend their complaint, allowed them to amend their complaint after the close of discovery. And, and, and still when they get to the third summary judgment, even though they have seen our entire case, all of our arguments and two earlier summary judgments, when they get to the third summary judgment, Judge Carney goes and says, there is a complete failure of proof here. Can you speak to the, the trade secret misappropriation claim? Because Judge Carney on that one, as I read is the opinion said, well, these, the customer lists were provided to the vendors. And so there was not a reasonable effort to maintain the trade secrecy around them. And that was the basis for granting summary judgment. Can you speak to that issue? There, there, there was, they had agreements with the vendors. The vendors are the actual jewellery stores that come in and appear on the TV show. And so these vendors present their, their jewellery and their, and the host of the show goes and assists the jeweller in making the best case for why their jewellery should be purchased. And then the auction proceeds. And so they have a contract with these vendors. Each one of those contracts did not have any confidentiality about the customer list. Now, what is the customer list? The customer list is simply the people who get the winning bid. And so then the jeweller, it's not the show that sends the jewellery to the, to the, to the person who purchased it. It's the jeweller. And so the jeweller arranges for either the person to come into the jewellery store, because the show's shown just in Orange County. Your friends on the other side make the point that, you know, we gave these lists to the vendors so that we could conduct our business so that the customers could receive the jewellery they paid for. And we didn't, in the process of, of, um, operating this basic business model thereby lose our trade secret protection. What, what's your answer to that? Well, that it, that is what happens. Your trade secrets are something you must maintain a secret if it's necessary for your business model to disclose a particular piece of information to third parties, then, then there is not trade secret. The statute just says that they have to take reasonable measures. Now, not the absolute best ironclad belt and suspenders measure. Maybe it would have been better to put in the contracts, but if they know that their vendors by course of performance are ones whom they trust and have confidence in will treat this appropriately, why isn't that a reasonable measure? That's not a, that's not a reasonable measure because there's nothing in this record that suggests that that relationship. Is there any evidence that any of their vendors ever disclosed the customer list, ever used them inappropriately? We, there's no evidence that they used them in any way at all, other than to provide the jewelry. I don't know. So that it looked like it was a successful measure for maintaining the secrecy. But the problem with that argument is that there's no evidence in the record that that in fact is the case, that they had some sort of confidential relationship with these vendors. There was only one declaration from one vendor and that declaration was excluded based on hearsay and they don't appeal that evidentiary ruling. So that there's absolutely no evidence. I thought the CEO testified as well that there were oral sort of a course of dealing with the vendors where they understood that the vendors were not to simply disclose to the outside world the identity of people who were purchasing the jewelry. Right. Even, even in the, their third amended complaint filed years later, knowing their arguments, they did not allege oral agreement. They said, they alleged in, in the, in the amendment, in the complaint that these were written confidentiality agreements. They never produced a single one of them. They net this whole idea that there was somehow at the last minute, they're going to introduce an oral agreement. These oral agreements violate the statute of frauds anyways. There couldn't, it wouldn't have been an enforceable agreement. And so, so suddenly when they could not produce, this is, this is part of Judge Carney's point that there was a complete failure of evidence. There was not a single such agreement, yet that was the basis for the complaint, even the third amended complaint. Well, the, the TV host here did have an agreement that, that said she, she was not to disclose customer lists. And the allegation here is that she did so. Well, there, there's, there was no evidence. That's, that's also what Judge Carney pointed out. There's zero evidence that she disclosed anything. She was a person within the Vietnamese, she's a celebrity in the Vietnamese community. She's a multiple beauty queen winner and singer in the Vietnamese community. She has her own following. She has this huge list. The only thing that they identified was like one or two names that overla, on her phone that overlapped with their list. Well, she has this huge following anyways, of course, in the Vietnamese community in Orange County, which is quite large, there's going to be some overlap between her list. They never showed once that those couple of names that matched up were somehow taken from their list. They claim the whole list was copied, yet they can only find a couple of names on a cell phone that matched up. So once again, that's the kind of complete failure of evidence. If you're going to make a case with that, that someone has taken your customer list and then find the evidence to show that they're in possession of that customer list, their, their contention was there was a, there was a space of two minutes when she was supposedly alone. And this is getting into the, Well, I didn't understand the, the ruling below to be based on this. I thought at least on this issue of the customer list, it was based on, I am holding that they had not reasonably protected those lists because they had given them to vendors. I think there's some other reason why this claim fails, but that was at least according to the district court, that was the one reason he gave. I believe that he does, does discuss, I thought that he did discuss this issue, but it, but the point being that that, that this is in the, this is what the record is. And the answer to the question is about whether discovery had closed. Yes, discovery had closed. It was an extensive discovery in this case. It went on for years. The depositions were extended beyond the minimum seven hours. It was, it was, it was extensive discovery in this case. And that's why the judge was so disappointed in there being complete failure proof. So regardless of where they go with this, if they go in that direction, complete failure proof, they don't have additional evidence. If they go to the video, what video? There was, they didn't copy, they didn't keep copies of all of their shows. There, there, that, that was another major problem with it, with, with their case. So that after they, the Ninth Circuit sent it back, sent it back to Judge Carney on the preliminary injunction motion saying, well, no, consider look and feel. That should have been, if they weren't aware of that fundamental concept in, in trade dress law before, the Ninth Circuit let them know that they need to take all these functional elements and show how the overall look and feel of those No attempt, no survey. Judge Carney points out no survey from consumers that there was a particular look and feel and no ability of a jury to look at anything. This was the time to present the evidence. You don't, you don't attack a summary judgment by going and presenting weak evidence. And then when it turns out that someone goes, says no reasonable jury could conclude based upon a couple of screenshots from a TV show, what the look and feel of the whole show is, you then don't go and say, well, you still have to deny the summary judgment because at trial, I may have be able to have better evidence. The time to oppose with your best evidence is at the summary judgment motion, and at least have the minimum level. Those screenshots are completely inadequate for that purpose. If I, if I could move on to the whole issue of the false advertising with the question of the herbal. It is very important to understand that that the plaintiffs only sell in the Vietnamese community and primarily only in Orange County. Their sales over a six year period amounted to about 2,000 units per year. We're talking about 70, about $73,000 in sales per year. Mr. Nguyen admits he, he doesn't sell in anything other than Vietnamese stores. And so he, the, when you're dealing with my client, Author 7, sold in GNC, sold in drugstores all over America. So it also sold through telemarketers. So you have this huge exposure across the entire United States. And so there, for them, when it goes to the issue of harm, the only relevant advertising that for purposes of them claiming some kind of harm was in the Vietnamese community in Orange County where that newspaper ad appeared. Because any other advertising in any other market is irrelevant to their sales because they're not in any other market. They're only in the Vietnamese market. And so then that's why it became so critical for them to establish what the market was. If they're, if they're saying it's only to go into that, that's why our brief focuses on this whole issue. Is it even possible to define a market according to the ethnicity of the purchasers? And the, and the, in this court, when we cited the Ninth Circuit case law, it says no. It's a, it's about, it's about the, the sellers that define it or the products that are in the market, but not the purchasers. Because you can't, there was no evidence whatsoever that these, that any Vietnamese person looked at that ad and had any negative impact from it, zero. And so, so then you, so that, that goes, so this whole concept that maybe there was other advertising in mass, mass distributed in the United States that made some sort of verbal claim, the only way that would ever come up in any context with respect to them was, would be with respect to some sort of injunctive relief. And they've waived that issue. That was never, the court's absolutely correct. That issue wasn't raised before. That wasn't their point. They want money. They want, they want to recover their profits. And they've made a, they've made an argument that is, is, it's really critical to focus on with respect to damages. They've made, they've, in order for them to get the damages, they need to have, show that there's comparative advertising. Comparative advertising cases are typically where on my client's box, if I'm being sued, there's the name of the competing product, the name of our product, and there's a comparison chart. And so that, and then there's direct comparison, or it goes and says, implies it by going and saying, in the Vietnamese market, there's only two, and our major competitor does this. Then you can say, infer it. But there's a direct comparison. There's no direct comparison on this box. Their argument and their reply brief is the weakest legal argument I've ever seen on this. Their argument is because the two products sit on the shelf next to each other in the Vietnamese market. That makes it a comparative advertising case. That would gut Ninth Circuit law. The comparative advertising cases, that would mean that every case is a comparative advertising case. Anytime you put any advertising, if the, if GNC goes and happens to set your product on their shelves next to them, suddenly what wasn't a comparative advertising case under Ninth Circuit law suddenly becomes one. And so that can't, that is not the test. And that particular slippery slope, the court should not go down. Thank you. Thank you, counsel. Good morning, Your Honor. I have brief time. I'm going to quickly start with false advertising claim. Um, the comparative advertising issue. What's important to keep in mind here is that the case law on comparative advertising is such that if it is a comparative advertising claim, there's a presumption of injury. We don't need a presumption of injury to survive summary judgment. We need facts from which an inference could be made. Traffic school suggests you're not within that presumption. The traffic school case? I think that, I think that we are within that presumption, but I, I'm, I'm willing to, to hitch my wagon to the, the fact that we don't need the comparative advertising, uh, with, this doesn't need to be a comparative advertising case for us to survive summary judgment on the false advertising claim. And, and the reason for that is that, um, we do, we have more than just a single line and a declaration in terms of the, they're being injury. The fact of them being on the shelf matters and side by side matters for a big reason. And it's not just as to it being a comparative advertising, um, case. On the label, it has this false representation. These are, these are, these are comparable products. They, they, they're doing the same thing. They're being sold for the same purpose. Uh, and the, the, they're to the same market of people, Vietnamese community. They're on the shelves in Vietnamese markets in Vietnamese language is telling them this product, uh, is 100% natural herbal. Now there's other evidence that shows that in this community that matters because as a demographic, not, not, not everyone, but as a demographic, uh, vegetarianism is highly valued. These, these products are not purely vegetarian. That makes that, that's what makes that statement false. By having the side by side, an inference can be made. It doesn't need to be a presumption, but an inference can be made that sales are being diverted because this community that is being directly marketed to, uh, cares about that issue, cares about that statement. Given the, the contact, all those together, raise a, raise an inference. We don't need a presumption. Raise an inference that we, we have been injured. Okay. All right. Thank you. Thank you. Case just argued to be submitted.
judges: Bybee, Collins, Bress